IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:12-CV-50-FL

| | | |
|---|---|---|
| THE HANOVER INSURANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| RICKY A. LANIER; KATRINA P. | ) | |
| LANIER; CARLTON S. LANIER; | ) | |
| ANGELA G. LANIER; and, GLOBAL | ) | |
| CONSTRUCTION, INC., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on plaintiff's motion for summary judgment (DE 44), to which

defendants responded and plaintiff replied. For the following reasons, plaintiff's motion for

summary judgment is granted in part and denied in part.

**BACKGROUND**

Plaintiff filed complaint on March 29, 2012, alleging claims against defendants for breach

of contract in relation to the indemnity agreement between the parties, and for recovery of attorney's

fees and expenses of litigation for enforcement of the indemnity agreement pursuant to N.C. Gen.

Stat. § 6-21.2. Defendants answered complaint on July 16, 2012. On February 28, 2013, plaintiff

moved for summary judgment as to all claims,[1] seeking a sum certain of $206,748.56, which it

alleges is owed under the indemnity agreement. In their response, defendants asserted that North

---

[1] The court notes that count two of the complaint has been constructively abandoned where plaintiff recognizes its losses are now liquidated, obviating the utility of collateral. Pl.'s Mem. 9 (recognizing that count two is now "moot"). Therefore, summary judgment is sought only as to counts one and three of the complaint.

Carolina's three-year statute of limitations for contract disputes bars recovery. Plaintiff replied that since the contract was signed under seal, the applicable statute of limitations is ten years, and that even if the statute of limitations is three years, as defendants alleged, it would not provide a complete bar to all recovery sought.

## STATEMENT OF UNDISPUTED FACTS

Defendant Global Construction, Inc. ("Global") was a North Carolina Corporation at all relevant times in the complaint, and until dissolution on April 4, 2012. Defendant Ricky A. Lanier was its president and registered agent. Plaintiff is a New Hampshire corporation, with its principal place of business in Massachusetts, and it is licensed to do business in North Carolina.

Plaintiff issued payment and performance surety bonds on behalf of defendant Global in connection with multiple construction contracts. In exchange, defendants executed an agreement on March 5, 2004, to indemnify plaintiff "from and against every claim, demand, liability, cost, charge, suit, judgment and expense which [plaintiff] may pay or incur, including, but not limited to, loss, interest, court costs and consultant and attorney fees" arising from the issuance of the payment and performance bonds. Compl. Ex. A ¶ 2 [hereinafter Agreement].

Under the contract, "[p]ayment shall be made to [plaintiff] by [defendants] as soon as liability exists or is asserted against [plaintiff]," in sufficient amount "to indemnify and hold [plaintiff] harmless from and against any loss, cost, interest, and expense." Agreement ¶ 3. The payment from defendants to plaintiff shall be either "the amount of the claim, demand, or suit asserted against the bond or bonds by any claimant or obligee, plus the amount [plaintiff] deems sufficient, in its sole discretion, to indemnify and hold it harmless from and against any loss," or, if the amount is "unascertainable or unliquidated," then "the amount [plaintiff] deems sufficient, in its sole

2

discretion, to indemnify and hold it harmless from and against any loss." Id. The contract further

provides plaintiff "shall have the right to hold such funds [paid by defendants] as collateral . . . until

[defendants] serve evidence satisfactory to [plaintiff] of its discharge from all bonds." Id. Plaintiff

also has the right "to use such funds or any part thereof, at any time, in payment or settlement of any

judgment, claim, liability, loss, damage, fees, or any other expense." Id.

Plaintiff has "the exclusive right to adjust, settle, or compromise any . . . proceeding arising

out of any bond against [plaintiff] and/or [defendants], take whatever action it deems appropriate in

response thereto, and its determination of whether to defend or settle the same shall be binding and

conclusive upon [defendants]." Agreement ¶ 3. To prove the amount owed to plaintiff, "[v]ouchers

or other evidence of payment by [plaintiff] shall be conclusive evidence of the fact and amount of

such liability, necessity, or expediency and of [defendants'] liability to [plaintiff] therefor." Id.

Defendants executed the document as indemnitors, with each individual signing as such and

defendant Ricky A. Lanier also signing on behalf of defendant Global, as its president. Agreement 3.

Above the signatures, the indemnity agreement states: "IN WITNESS WHEREOF, the Indemnitors

who are individuals have hereunder set their hands and seals, and the Indemnitors which are . . .

corporations . . . have caused the Agreement to be duly executed by their authorized representatives

. . . ." Id. The instructions for the execution of the document, found immediately after the

signatures, read as follows: "If the Indemnitor is an individual, type full name, sign on next line, and

fill in address, SS#, and DOB. If the Indemnitor is a corporation, type full name, impress with seal,

sign on next line along with capacity of officer signing, and fill in corporate address and Fed. Tax

ID #." Id. at 4. No seals or placeholders such as "(SEAL)" or "L.S.," appear next to the individual

defendants' signatures, and defendant Global's corporate seal is not impressed upon the document.

3

Several claims have been brought against plaintiff in connection with the contract surety bonds on defendants' account. Plaintiff settled and paid all but one of the claims, and incurred costs and expenses in the course of investigating and defending the claims and lawsuits. Plaintiff also hired an accounting firm to review defendant Global's books and records. Finally, plaintiff has incurred, and continues to incur, expenses enforcing its rights under the indemnity agreement. The payment issuance dates range from June 19, 2008, to February 26, 2013. The total calculation of expenses plaintiff seeks pursuant to the indemnity agreement from defendants is $206,748.56.

On June 20, 2009, counsel for plaintiff sent an e-mail correspondence to defendants explaining the expenses already incurred at that time were approximately $81,000 and that plaintiff expected to expend another $85,000 in the near future. Therefore, plaintiff's counsel stated, "[plaintiff] hereby demands that [defendants] post cash collateral as provided in their Agreement of Indemnity . . . in the amount of $170,000." Pl.'s Interrogs. Ex. 1. In the alternative, plaintiff sought financial information on defendants' ability to pay.

In a letter dated May 11, 2011, counsel for plaintiff summarized further expenses that had been paid and would be pending in order to settle claims on defendants' account. The letter further stated that plaintiff "demands that [defendants] immediately reimburse and indemnify [plaintiff] in the amount of $140,000." Pl.'s Interrogs. Ex. 2. Plaintiff also "demands that the indemnitors post cash collateral in the amount of $110,000." Id. Counsel for plaintiff also repeated the request for defendants' financial information.

A second letter dated March 20, 2012, from plaintiff's counsel states as follows:

At this time, [plaintiff] has incurred a total of $178,903.97 in loss and expense but has not received any collateral from you or been indemnified in any amount. [Plaintiff] hereby demands that you fully reimburse the above amount immediately

4

or, if you dispute that debt, post cash collateral in the amount of $205,000 within five days of the date of this letter.

Pl.'s Interrogs. Ex. 3. The letter further stated that plaintiff would "enforce its rights under the Agreement of Indemnity, if necessary by filing suit to recover its loss and expense." Id. Defendants did not make any payments to plaintiff, giving rise to the current action.

## COURT'S DISCUSSION

A.     Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Summary judgment is not a vehicle for the court to weigh the evidence and determine the truth of the matter, but to determine whether a genuine issue exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Only disputes between the parties over facts that might affect the outcome of the

5

case properly preclude the entry of summary judgment. <u>Anderson</u>, 477 U.S. at 247-48. Accordingly, the court must examine the materiality and the genuineness of the alleged fact issues in ruling on this motion. <u>Id.</u> at 248-49.

B.     Analysis

An indemnity agreement "obligates the indemnitor to reimburse his indemnitee for loss suffered or save him harmless from liability." <u>New Amsterdam Cas. Co. v. Waller</u>, 64 S.E.2d 836, 828 (N.C. 1951). Indemnity contracts generally are enforced according to their terms. <u>See, e.g.</u>, <u>American Ins. Co. v. Egerton</u>, No. 94-1911, 1995 WL 371452, at *2-3 (4th Cir. 1995) (unpublished per curiam opinion) (enforcing a North Carolina indemnity agreement with substantially identical language according to its terms); <u>First Nat. Ins. Co. Of America v. Sappah Bros. Inc.</u>, 771 F. Supp. 2d 569, 576 (E.D.N.C. 2011) (enforcing a substantially similar indemnity agreement between a construction contractor and the surety on its payment and performance bonds). "[A] cause of action on an obligation to indemnify normally accrues when the indemnitee suffers actual loss." <u>Premier Corp. v. Economic Research Analysts, Inc.</u>, 578 F.2d 551, 553-54 (4th Cir. 1978) (holding that plaintiff's claim for indemnity under the contract was not barred by North Carolina's statute of limitations).

In this case, there is no genuine issue of fact that defendants signed the indemnity agreement or that it is a valid contract. <u>See</u> Resp. 1-2. There is also no genuine issue of fact that some portion of plaintiff's losses were suffered since March 29, 2009, and thus are not barred by any statute of limitations. <u>See</u> Cotto Aff. Ex. A (detailing indemnity costs with dates ranging from June 19, 2008, to February 26, 2013); Reply 4-5 (alleging that the total costs incurred since March 29, 2009, are $147,131.06). Therefore, the court grants summary judgment in favor of plaintiff on the issue of

6

liability and holds that plaintiff is entitled to that portion of losses suffered since March 29, 2009, specified to be $147,131.06. The remaining issue is whether plaintiff is also entitled to damages in excess of this amount.

Plaintiff raises two arguments in support of full recovery of $206,748.56: first, that the indemnity agreement was signed under seal, and therefore the statute of limitations is ten years pursuant to N.C. Gen. Stat. 1-47(2); and second, that the contractual provision on posting collateral was breached within three years pursuant to plaintiff's June 20, 2009, letter demanding $170,000.00 in collateral. Reply 1-5. The court turns first to the ten-year statute of limitations question.

If the indemnity agreement was signed under seal, then the statute of limitations is ten years, otherwise it is three years. See N.C. Gen. Stat. §§ 1-47(2), 1-52(1). In North Carolina, "if it appears without ambiguity, on the face of the contract, that a party signed under seal, it is held as a matter of law that the contract is under seal. If it is ambiguous as to whether a party adopted a seal, it is a jury question as to whether the party signed under seal." Central Systems, Inc. v. General Heating & Air Conditioning Co. of Greenville, Inc., 268 S.E.2d 822, 824 (N.C. Ct. App. 1980) (citing Bank of N.C., N.A. v. Cranfill, 253 S.E.2d 1 (N.C. 1979).

Contracts with a preprinted seal, the word "SEAL" in parentheses or brackets, or "L.S." (*locus sigilli*) next to or otherwise close by each individual signature are considered unambiguously sealed. See, e.g., Cameron v. Martin Marietta Corp., 729 F. Supp. 1529, 1530-31 (E.D.N.C. 1990) (holding that the presence of the word "seal" next to signatures qualifies the document as sealed); Bank of N.C., 253 S.E.2d at 1 (finding that "witness our hands and seals" plus (SEAL) next to signature qualifies document as unambiguously sealed); Mobil Oil Corp. v. Wolfe, 252 S.E.2d 809, 809-11 (N.C. 1979) (indicating that "L.S." next to signatures qualifies document as unambiguously

7

sealed); Bell v. Chadwick, 39 S.E.2d 743, 744 (N.C. 1946) (holding that [SEAL] next to signatures qualifies document as unambiguously sealed). However, the mere attachment of a corporate seal to a contract, which shows that the corporation is a party to the contract, does not make that contract signed under seal. See Square D Co. v. C.J. Kern Contractors, Inc., 334 S.E.2d 63, 65-66 (N.C. 1985) (affirming summary judgment for defendants where the corporate seal was attached to the contract to show that the execution of the contract was duly authorized by the corporation as a party to that agreement, but no other indicators of a contract under seal were present).

The indemnity agreement in this case contains language above the signatures which suggests some intent to sign under seal. See Agreement 3 (stating "set their hands and seals"). No such language was contained in the contract at issue in Square D, where the court held as a matter of law that the contract was not signed under seal. See Square D, 334 S.E.2d at 66. However, this contract is missing any actual seals or seal equivalents, which would indicate that the document is unambiguously sealed. See Bank of N.C., 253 S.E.2d at 1. Thus, there is a genuine issue of fact as to whether the contract is signed under seal. Accordingly, plaintiff is not entitled to summary judgment on the basis that the statute of limitations is ten years.

Plaintiff argues that even under the three-year statute of limitations it is entitled to the full recovery of $206,748.56 through the collateral demand provision of the indemnity agreement. Reply 4. This provision provides:

> Payment shall be made to [plaintiff] by [defendants] as soon as liability exists or is asserted against [plaintiff], whether or not [plaintiff] shall have made any payment therefor. Such payment to [plaintiff] shall be: a) if the amount asserted as a claim, demand or suit is an ascertainable or liquidated amount, the amount of the claim, demand, or suit asserted against the bond or bonds by any claimant or obligee. plus the amount [plaintiff] deems sufficient, in its sole discretion, to indemnify and hold it harmless from and against any loss, cost, interest, and expense necessary to defend,

8

investigate, or adjust the claim, demand, or suit; or b) if the amount asserted as a claim, demand, or suit is an unascertainable or unliquidated amount, the amount [plaintiff] deems sufficient, in its sole discretion, to indemnify and hold it harmless from and against any loss, cost, interest, and expense necessary to defend, investigate, or adjust the claim, demand, or suit. [Plaintiff] shall have the right to hold such funds as *collateral* (without any obligation to earn interest on the *collateral* for [defendants]) until [defendants] serve evidence satisfactory to [plaintiff] of its discharge from all bonds and all liability by reason thereof, and to use such funds or any part thereof, at any time, in payment or settlement of any judgment, claim, liability, loss, damage, fees, or any other expense.

Agreement ¶ 3 (emphasis added). Plaintiff asserts that its e-mail correspondence, characterized as a "collateral demand" for $170,000.00 on June 20, 2009, provides an alternate avenue aside from direct indemnity through which to recover. Reply 4. The "demand" was sent within the three-year statute of limitations, and may be combined with losses and expenses actually incurred since March 29, 2009, to provide full recovery. Reply 4.

The court finds plaintiff's argument to be without merit. The undersigned notes plaintiff cites no legal authority for the assertion that its collateral demand provides the proper date for accrual of the statute of limitations. Reply 4-5. Furthermore, the plain language of the contract indicates that the payment which plaintiff may hold as collateral, "shall be made . . . as soon as liability exists or is asserted." Agreement ¶ 3. Thus, the provision on holding funds as collateral is not sufficient to disturb North Carolina's general rule that the statute of limitation for an indemnity agreement accrues "when the indemnitee suffers actual loss." See Premier Corp., 578 F.2d at 553-54.

In sum, plaintiff is entitled to summary judgment on the issue of liability, and for purposes of recovery to $147,131.06, plus pre-judgment interest on that amount accruing at the legal rate of eight percent per annum from and after March 29, 2009, up to and until date of judgment. However, given that there is a triable issue of fact as to whether the indemnity agreement was signed under

9

seal, the vehicle of a summary judgment for the additional amount of $59,617.50, accruing prior to March 29, 2009, for recovery of the total amount of $206,748.56, as of February 28, 2013, is unavailable.

Plaintiff's entitlement to that additional sum of $59,617.50, as well at to any amounts owing from and after February 28, 2013, remain at issue in the case, and where it appears plaintiff also is entitled to its reasonable attorneys fees, final determination of the dollar amount of those fees. Trial on these remaining issues is set for August 19, 2013, at Raleigh, pursuant to notice which issued June 19, 2013, also setting the case for final pretrial conference at New Bern August 5, 2013. The parties shall make reference in their final pretrial preparations also to the court's case management order entered at docket number 39.

Where the court earlier allowed counsel for defendants to withdraw, and set a deadline for new counsel to file notice(s) of appearance, on or before July 9, 2013, with reminder in its order that the corporate defendant cannot by law proceed *pro se*, the court takes note also of today's deadline for such action to be taken.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is GRANTED in part and DENIED in part, in accordance with this order. The clerk shall serve this order upon plaintiff through counsel and on the individual defendants at the address(es) provided by formal counsel.

SO ORDERED, this the 9th day of July, 2013.

LOUISE W. FLANAGAN
United States District Court Judge

10